At approximately two o'clock of the morning of April 6, 1937, a Ford V-8 truck and attached trailer, driven by R.T. Cook departed from the bulk station of the Economy Oil Company, Inc., in Rayville, Richland Parish, Louisiana, and proceeded in a westerly direction. This equipment carried a number of gallons of gasoline to be delivered for that corporation, of which O.B. Hammett is president and principal stockholder, to a filling station in Arcadia, Louisiana, owned by Melton Nichols.
Sometime before five o'clock of that morning, while Cook was unloading the fuel into the tanks of the Nichols station, the night marshal of Arcadia observed and accosted him. Later his vehicle was seized and impounded by an officer of the Department of Revenue of the State of Louisiana, under a charge that the motor fuel tax law had been violated.
On April 12, 1937, the State of Louisiana instituted this summary action in the Second Judicial District Court for the Parish of Bienville alleging that Cook and Hammett transported said gasoline without having paid the levied tax thereon, or without having given bond to secure the payment of such tax, and that the delivery of it between the hours of nine o'clock P.M. and five o'clock A.M. was unlawful.
As prayed for, a rule issued to those defendants to show cause why the truck and trailer should not be forfeited to the State of Louisiana as a penalty for the violation of Act 6 of the Extra Session of 1928, as amended, and of Act 87 of 1936, and further to show cause why plaintiff should not have judgment against them for $2.29, with recognition of a lien and privilege on 28 gallons of seized gasoline.
Also, as plaintiff prayed in its petition, the court ordered the sheriff of Bienville Parish to take into his official possession 440 gallons of gasoline standing in the tanks of Melton Nichols, and that Nichols show cause why judgment should not be rendered against him for $29.51 and such gasoline sold in satisfaction thereof.
On the date of the action's commencement, April 12, 1937, the attorney for plaintiff addressed a letter to Cook and Hammett acknowledging "receipt of $39.99 from your agent, Mr. John McCarthy, in payment of all gasoline taxes sued for * * *." This amount obviously included also accrued penalties and costs. But the acceptance of the money was made "with full reservation of all rights of the State of Louisiana to proceed with its forfeiture proceedings against the Ford V-8 truck and trailer * * *." Hence, as a result of *Page 475 
this transaction, the only question left in the case was that concerning the right of forfeiture.
Cook and Hammett filed exceptions to the citations, to the jurisdiction of the court ratione personae, and of no cause and no right of action. Additionally, they pleaded the unconstitutionality of the statutes invoked by plaintiff, and tendered a joint answer.
It was admitted in this answer that Cook possessed and transported some gasoline between the hours of nine o'clock P.M. and five o'clock A.M.; but defendants averred that the tax levied thereon had been fully paid.
Intervening in the action was the O.K. Transportation Company, Inc. It alleged in its petition of intervention the adoption of all exceptions filed by defendants, and that it was the owner of the seized truck and trailer.
The mentioned exceptions to the citations, to the jurisdiction, and of no cause and no right of action were considered by the district court and overruled. By agreement of all interested litigants the plea of unconstitutionality was referred to the merits.
Evidence was adduced on the hearing of the rule to show cause, and there was judgment reading as follows:
"This cause came on for trial after being regularly fixed, the trial had, and the Court, being of the opinion that the plaintiff is entitled to the relief prayed for, for reasons orally assigned, it is, therefore,
"Ordered, Adjudged, and Decreed that the rule issued herein be made absolute, and, accordingly, there be judgment in favor of the State of Louisiana and against R.T. Cook and O.B. Hammett, decreeing the forfeiture to the State of Louisiana of that certain 1935 model Ford V-8 truck and trailer, bearing motor #BB18-2247435, Louisiana truck licence #48-928 and Louisiana trailer license #59021, as a penalty for the violation of Act 6 of the Extra Session of 1928, as amended, and Act 87 of 1936, and ordering said car seized herein sold without appraisement, and according to law, and out of the proceeds realized therefrom plaintiff be paid by preference and priority over all persons whomsoever;
"The demands of intervenor rejected at its cost.
"Done, Rendered, Read and Signed in Open Court on this the 30th day of April, 1937."
The minutes of the court state that the plea of unconstitutionality was overruled.
From the judgment defendants and the intervenor appealed to the Supreme Court. That tribunal transferred the case to this court.197 La. 1027, 3 So.2d 114.
In the brief of counsel for defendants and intervenor, it is said:
"Many issues were raised in the course of these proceedings, and the evidence on several occasions went entirely beyond such issues. Defendants pitch their case for the most part upon the exception to the jurisdiction of the Second Judicial District Court for the Parish of Bienville."
The exceptions to the citations and the plea of unconstitutionality are not urged in this court.
In connection with their questioning of the jurisdiction ratione materiae of the Bienville Parish District Court, appellants correctly show that they are residents of and domiciled in the Parish of Richland, Louisiana; and it is argued by them that under the general rule in civil matters, as stated in Code of Practice, Article 162, they must be sued before their own judge, that is to say before the judge having jurisdiction over the place where they have their domiciles or residences.
Countering such argument, the State of Louisiana points out that this proceeding involves an action of forfeiture; and the contention is made that it is "an in rem action directed against the property seized * * *, and in this case was properly brought at the place of the seizure; namely, Bienville Parish, within the jurisdiction of the Second Judicial District Court."
The action was instituted pursuant to the authority granted in Act 6 (E.S.) of 1928, as amended, and in Act 87 of 1936, being the motor fuel tax laws of Louisiana. The provisions of the first named statute prohibit the transportation of gasoline when the tax levied thereon has not been paid, or the payment thereof guaranteed; and they recite that any vehicle transporting such gasoline is subject to seizure and forfeiture and sale as a penalty for the violation. All funds collected from the seized and forfeited property are to be paid into the state treasury and credited to the general highway fund. *Page 476 
The first named statute further provides, to quote Section 7-E as added by Act No. 16 of 1932, § 2 and amended by Act No. 34 of 1934, § 6, thereof, that:
"It shall be unlawful for any distributor or any retail dealer to receive or transport by automobile or truck and have delivered into the storage tanks or equipment of the said distributor or retail dealer any gasoline or other motor fuel between the hours of 9:00 o'clock P.M. and 5:00 o'clock A.M., and the receipt of any gasoline or other motor fuel by automobile or truck by the said distributor or retail dealer during the said hours shall be a violation of the provisions of this Act by said distributor, retail dealer and the person, firm, or corporation owning and having so delivered said gasoline or other motor fuel, and their agents, servants or employees engaged in making said unlawful delivery, and the automobile or truck so delivering any gasoline or other motor fuel during the said hours, shall be subject to seizure by the Supervisor and forfeiture and sale in the manner provided for in this Act."
Statutory provisions similar to those just mentioned are to be found in Act 87 of 1936.
A definition of the noun forfeit, as given in 26 Corpus Juris page 891, is: "A fine, a forfeiture; a mulct; a penalty; not merely that which is actually taken from a man by reason of some breach of condition, but also that which becomes liable to be so taken; something lost by the commission of a crime; something paid for the expiation of the crime; that which is forfeited or lost by neglect of duty; that which is or may be taken from one in requital of a misdeed committed; that which is lost, or the right to which is alienated by a crime, offense, neglect of duty, or breach of contract."
In 23 American Jurisprudence (verbo Forfeiture and Penalties) Section 2, it is stated:
"In a strict signification, a forfeiture is a divestiture of property without compensation, in consequence of a default or an offense, and the term is used in such a sense in this article. A forfeiture, as thus defined, is imposed by way of punishment, not by the mere convention of the parties, but by the lawmaking power, to insure a prescribed course of conduct. It is a method deemed necessary by the legislature to restrain the commission of an offense and to aid in the prevention of such an offense. The effect of such a forfeiture is to transfer the title to the specific thing from the owner to the sovereign power.
"The primary and legal meaning of the word `forfeit' is `to lose'. Although in common parlance the term `forfeiture' strongly implies penalty and is often used synonymously with that term, `forfeiture' has been said to be more comprehensive in its significance then `penalty'. Similarly, although the word `forfeit' is often used synonymously with the term `fine', it has been said that the expression `forfeiture' is distinguished from the term `fine' because it means the sequestration of property, while the term `fine' does not necessarily have this meaning. A forfeiture has been said to be more than, and different from, a punishment."
And in Section 6 of the last cited authority, we find:
"Forfeitures, in many cases of felony, did not attach at the early English common law where the proceeding was in rem until the offender was convicted, because the Crown had no right to the goods and chattels of the felon without producing the record of his conviction. Forfeitures under the American law have never proceeded on such a theory. Our statutes providing for forfeiture have been, since the earliest days of our history as a nation acting under the Constitution and congressional laws, proceedings in rem, the policy of which is confiscation and forfeiture to the government directed against property itself. The ancient doctrine requiring conviction of a personal offender does not apply to seizures and forfeitures created by statutes in rem, for the reason that the thing in such a case is primarily considered as the offender, or rather that the offense is attached primarily to the thing, whether the offense is malum prohibitum or malum in se."
In view of the language of the motor fuel tax statutes of Louisiana and that used in the above quoted extracts, it seems proper to say that a forfeiture action is quasi criminal in nature. It seeks to effect punishment for a violation of law. Furthermore, it is a proceeding primarily against the thing — an in rem action; although the statutes under consideration do provide for affording the property's owner fair opportunity for a hearing in a court of competent jurisdiction. *Page 477 
The instant action being of the nature just mentioned, that is quasi criminal, we are of the opinion that the rule of domicile and residence relied on by defendants is not applicable. As stated in the above cited article 162 of the Code of Practice, that general rule applies in civil matters. In a forfeiture case, such as here, jurisdiction appears to be given to the court of the district where the seizure is made. 23 American Jurisprudence (verbo Forfeitures and Penalties) Section 11.
The seizure of the truck and trailer occurred in Bienville Parish; and we think, therefore, that the Second Judicial District Court for that parish properly entertained jurisdiction of the proceedings.
Appellants state, in connection with their exceptions of no cause and no right of action, that: "* * * the alleged driver of the truck, R.T. Cook, was not shown to have been the agent or employee of the alleged owner of the truck, O.B. Hammett. Nor do the allegations disclose that there was any relationship whatever between them which would render O.B. Hammett, or equipment purportedly owned by him, responsible for any wrongful act of R.T. Cook, the alleged driver.
"There is no allegation that Mr. Nichols, the operator of the filling station, had ordered any gasoline or received the delivery of any gasoline or consented thereto."
These exceptions, in our opinion, were correctly overruled. The pleadings of plaintiff set forth sufficient facts tending to show the transportation and delivery of gasoline in violation of the statutes; and the statutory provisions do not require the disclosing of the relationship existing between the owner of the truck and its operator.
As to the merits of the case, appellants insist that all of the gasoline involved, whether in the truck seized or in the tanks of the Nichols filling station, had been previously purchased from the Rodessa Refining Corporation or the Grogan Oil Company, and that the evidence shows the payment of all taxes due thereon to the State of Louisiana, or a guarantee of payment of them, by those companies. Even if this be true, there was still a violation of the statutory provisions warranting a seizure and forfeiture of the truck and trailer. In no unmistakable language Section 7-E of Act 6, Ex.Sess. of 1928, as amended, which is above quoted, makes unlawful the transportation and delivery of gasoline between the hours of 9 o'clock P.M. and 5 o'clock A.M., and subjects the offending vehicle to the forfeiture penalty; and admittedly the transportation and delivery complained of in this case occurred during the prohibited hours of the morning of April 6, 1937.
It is a recognized rule that a forfeiture is a harsh remedy and is not favored in law; and ordinarily statutes authorizing the forfeiture of property are to be strictly construed, since they are very drastic in their operation. But, as stated in 23 American Jurisprudence (verbo Forfeitures and Penalties) Section 5: "* * * statutes to prevent fraud upon the revenue laws are considered as enacted for the public good and to suppress a public wrong and, therefore, although they impose forfeitures, are not to be construed, like penal laws generally, strictly in favor of the defendant, but are to be construed fairly and reasonably, so as to carry out the intention of the legislature. In accordance with the general principle that the courts sedulously avoid a construction which is tantamount to judicial legislation, the courts will not force upon a forfeiture statute a construction which amounts to reading into the law provisions not inserted therein by the legislature."
The forfeiture demanded by the state in this case seems severe and unjust, as defense counsel argues, particularly in view of the existing circumstances and the small amount of the tax involved. As above pointed out, however, there has been a violation of the clear expression of the Legislature, and the forfeiture sought is strictly within the letter of the law; and, consequently, we are powerless to afford appellants any relief.
The judgment appealed from must be and it is affirmed.
 On Rehearing.
In his application for a rehearing defense counsel alleged:
"The Court is in error in holding that it is powerless to afford relief in cases of this kind, for the reason that courts have always looked to the substance of quasi criminal violations, and while a violation *Page 478 
may have existed, if there was no evil intent, or intentional wrong doing, fines, penalties and forfeitures have not been visited upon the guilty parties. In interpreting forfeiture statutes courts consider both the letter and spirit of the law."
Such assignment is supported by his brief in which there is cited the case of State v. Simmons et al., La.App., 183 So. 69, 71, wherein this court recognized the doctrine that "forfeitures are not favored, and, to be incurred, must be strictly within the letter and spirit of the law."
On this showing a rehearing was granted to permit our further consideration of the case.
The transportation of gasoline by truck, together with its delivery into the storage tanks of a retail dealer, between the hours of 9 P.M. o'clock and 5 A.M. o'clock, is unlawful, and for it a forfeiture of the truck is authorized, under both the letter and the spirit of Section 7-E of Act 6, Ex.Sess. of 1928, as amended, and Section 7 (f) of Act 87 of 1936. In unambiguous phraseology those statutes so declare and the purpose of the act, which includes its spirit, is to prevent the perpetration of fraud upon the revenue laws of the state. In many instances law violations are difficult of detection under cover of darkness; and by prohibiting all commercial transportation and delivery of gasoline at night there is eliminated to a large extent a means of evading payment of the imposed tax.
It is argued that Cook was not wilfully attempting to cheat or defraud the state of its gasoline tax when apprehended. This is of no importance. The existence of a designed attempt to defraud is not made essential by the statutes. A committing of the reprobated act of transporting and delivery is alone required to effect a violation; and this was admittedly done.
The case of State v. Simmons, supra, is inapplicable. Therein, neither the owner of the impounded truck nor its authorized agent consented to the retail dealer's withdrawal of gasoline from the transporting vehicle, and, consequently, there was no delivery within the letter and spirit of the above discussed statutes.
Accordingly, our further consideration of the case convinces us that the original decree is correct, and it is reinstated and made the final judgment of this court. *Page 495